2012-64082 / Court: 127

Filed 12 October 26 A11:06
Chris Daniel - District Clerk
Harris County
ED101J017151477
By: Jerri L. Coble

CAUSE NO. _____

| | | |
|---|---|---|
| JOSE MARIA MOYA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF JOSE MARIA SAUCEDA, JR., DECEASED; JOSE MARIA SAUCEDA, SR.; MARIA SOLIS; ALICIA MOYA; LAURA LOZANO AS NEXT FRIEND OF JOEL SAUCEDA, A MINOR, AND CHRISTINA M. SCOTT AS NEXT FRIEND OF ANGEL SAUCEDA, A MINOR | § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| vs. | § § | HARRIS COUNTY, TEXAS |
| CITY OF PASADENA, TEXAS, AND DETECTIVE MIKE YOUNG, OFFICER COPPEDGE (F/N/U), OFFICER TEEPE (F/N/U), OFFICER PETER RUFFIN, AND JOHN DOES, IN THEIR INDIVIDUAL CAPACITIES AND IN THEIR OFFICIAL CAPACITIES FOR THE CITY OF PASADENA, TEXAS | § § § § § § § § § § § | _____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

Jose Maria Moya, Individually and as Administrator of the Estate of Jose Maria Sauceda, Jr.; Jose Maria Sauceda, Sr.; Maria Solis; Alicia Moya; Laura Lozano as next friend of Joel Sauceda, a minor; and Christina M. Scott, as next friend of Angel Sauceda, a minor ("Plaintiffs"), file this their Original Petition complaining of the City of Pasadena, Texas, and Detective Mike Young, Officer Coppedge (f/n/u), Officer Teepe (f/n/u), Officer Peter Ruffin,

640779

EXHIBIT A

and John Does, in their individual capacity and in their capacity as employees of the City of Pasadena, Texas ("Defendants"), and respectfully show as follows:[1]

# I.
# NATURE OF LAWSUIT

1. This is a civil rights lawsuit brought under Title 42 U.S.C. Section 1983 ("Section 1983") and a negligence action brought under the Texas Tort Claims Act ("TTCA"). Plaintiffs also bring state law causes of action for ordinary negligence, assault and intentional infliction of emotional distress.

# II.
# DISCOVERY PLAN LEVEL 3

2. Plaintiffs request that this lawsuit be governed by Discovery Plan Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

# III.
# PARTIES

3. Plaintiff, Jose Maria Moya, is the son of Jose Maria Sauceda, Jr., Deceased ("Mr. Sauceda" or "Decedent"), and is the administrator of Mr. Sauceda's Estate. Plaintiff Jose Maria Moya is a resident of Pasadena, Harris County, Texas, and brings this lawsuit in his individual and representative capacities.

4. Plaintiff, Jose Maria Sauceda, Sr., is Mr. Sauceda's father, who resides in Weslaco, Hidalgo County, Texas.

5. Plaintiff, Maria Solis, is Mr. Sauceda's mother, who resides in Pasadena, Harris County, Texas.

---

[1] "Defendant City" refers collectively to the City of Pasadena, Texas, and the official-capacity defendants. "Individual Defendants" refers to the city employees sued in their individual capacities.

640779                                                    2

6. Plaintiff, Alicia Moya, is Mr. Sauceda's daughter, who resides in Pasadena, Harris County, Texas.

7. Plaintiff, Laura Lozano, brings this lawsuit as next friend of Joel Sauceda, a minor, who is Mr. Sauceda's son; they reside in Pasadena, Harris County, Texas.

8. Plaintiff, Christina M. Scott, brings this lawsuit as next friend of Angel Sauceda, a minor, who is Mr. Sauceda's daughter; they reside in Pasadena, Harris County, Texas.

9. Defendant City of Pasadena, Texas ("Defendant City") is an incorporated, home rule city situated in Harris County, Texas, and it may be served with process by and through its Mayor, Johnny Isbell, or its City Secretary, Linda Rorick, at 1211 Southmore, Pasadena, Texas 77502.

10. Defendant Officer Coppedge (first name unknown)[2] of the Pasadena, Texas Police Department is named in his individual and official capacities, and may be served with process at 1201 Davis St., Pasadena, Harris County, Texas 77506.

11. Defendant Detective Mike Young of the Pasadena, Texas Police Department is named in his individual and official capacities, and may be served with process at 1201 Davis St., Pasadena, Harris County, Texas 77506.

12. Defendant Officer Teepe (first name unknown) of the Pasadena, Texas Police Department is named in his individual and official capacities, and may be served with process at 1201 Davis St., Pasadena, Harris County, Texas 77506.

13. Defendant Officer Peter Ruffin of the Pasadena, Texas Police Department is named in his individual and official capacities, and may be served with process at 1201 Davis St.,

---

[2] Plaintiffs have not had the benefit of discovery, and the Defendant City has resisted Plaintiffs' requests for relevant information under the Public Information Act. After the Defendants finally provide Plaintiffs information regarding Mr. Sauceda's death, Plaintiffs will amend this Original Petition to include first names and the names of John Doe Defendants.

640779                                  3

Pasadena, Harris County, Texas 77506.

14. John Doe Defendants were employed by the City of Pasadena, Texas, during the relevant time period, and they are named in their individual and official capacities. The John Doe Defendants may be served with process under Texas Rule of Civil Procedure 109 or in another manner provided for by the rules once their identities are ascertained. These John Doe Defendants were directly involved in the events described below and caused or contributed to cause Plaintiffs' injuries and damages.

## IV.
## JURISDICTION & VENUE

15. Venue is proper in Harris County, Texas, because all or a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in Harris County, Texas. *See* Tex. Civ. Prac. & Rem. Code §§ 15.002(a)(1); 101.102(a).

16. This Court has personal jurisdiction over the Defendants. The Individual Defendants are residents of the State of Texas, and the Defendant City is a Texas governmental unit.

17. This Court has concurrent subject matter jurisdiction over Plaintiffs' federal claims under Section 1983, which waives the Defendants' immunity for purposes of this lawsuit.

18. As set forth in detail below, the Defendants' immunity has also been waived by the Texas Tort Claims Act ("TTCA"). Plaintiffs' TTCA claims arise from the condition or use of tangible personal property or real property, and the Defendant City, were it a private person, would be liable for those claims. Defendants' tortious conduct was not discretionary, and, alternatively, to the extent any such conduct was discretionary, the discretionary-function exception does not apply because such conduct was not carried out in good faith. Plaintiffs would also show that the TTCA's intentional-tort exception does not bar Plaintiffs' TTCA claims. Finally, Plaintiffs provided the Defendant City with presuit notice as required under the

640779

4

TTCA, and the Defendant City, whose officers caused and witnessed Mr. Sauceda's death, had actual knowledge of his death, thereby relieving Plaintiffs of any duty to provide presuit notice under the TTCA.

19. Further, the damages sought fall within the range set by statute for Texas district Courts.

## V.
## FACTUAL BACKGROUND

20. On or about March 25, 2012, the Defendants hogtied and killed Mr. Sauceda, a 41-year-old father of four and resident of Harris County, Texas. On the night of Mr. Sauceda's death, the Defendants had unlawfully arrested Mr. Sauceda, purportedly for suspicion of drunk driving. The Defendants had purportedly observed that Mr. Sauceda exhibited slurred speech, watery eyes, and other signs of intoxication. Thereafter, the Defendants decided to take Mr. Sauceda to Bayshore Medical Center (the "Hospital") to obtain a blood sample. At no time did Mr. Sauceda fight the Defendants.

21. Despite Defendants' "observation" that Mr. Sauceda was visibly intoxicated and lacked certain faculties, the Defendants hogtied Mr. Sauceda and placed him face down on a stretcher to transport Mr. Sauceda to the Hospital. Mr. Sauceda remained in this prone, facedown position until he died later that night. Once at the Hospital, the Defendants advised Hospital staff that Mr. Sauceda was not a patient and deterred their attempts to evaluate or treat Mr. Sauceda. The Defendants placed Mr. Sauceda in a private room, and Mr. Sauceda's blood was successfully drawn.

22. Despite the presence of several armed police officers, Mr. Sauceda's alleged intoxication, Mr. Sauceda's compliance, and the multitude of alternative restraint methods, the Defendants left Mr. Sauceda facedown and hogtied throughout the whole ordeal. The Defendants were present with Mr. Sauceda while he struggled, suffocated, turned purple and

640779                                    5

...

blue, and died. Despite these signs of danger, the Defendants failed to seek medical treatment for Mr. Sauceda.

23. *After* Mr. Sauceda died, the Defendants finally sought medical attention, but they left Mr. Sauceda's lifeless body facedown and hogtied on the stretcher. Upon the Hospital staff's arrival at Mr. Sauceda's lifeless body, they noticed that he had developed a purplish-blue complexion. They also noted several abrasions, lacerations, and indentations caused by the Defendants' excessive use of force and hogtie restraints. The sheet under Mr. Sauceda's face was visibly saturated with fluid, which Mr. Sauceda emitted during his struggle and death.

24. Notably, the Hospital staff's resuscitation efforts were delayed at least two minutes, during which Defendants casually removed Mr. Sauceda's shackles and handcuffs. The Hospital staff was unable to revive Mr. Sauceda. According to the Hospital, Mr. Sauceda died of asphyxiation, and he had suffered blunt force trauma to his head.

25. Prior to this lawsuit, the Defendants have acknowledged that Mr. Sauceda never fought with the Defendants, and never resisted after his blood was drawn. Nevertheless, the Defendants left Mr. Sauceda hogtied and unable to breathe even after his blood was drawn.

## VI.
## CAUSES OF ACTION

A. *Section 1983 – All Defendants*

26. Plaintiffs incorporate Part V in this section as if fully restated herein.

   i. Violations of Federal Law

27. The Defendants violated Mr. Sauceda's Fourth Amendment freedom from excessive use of force by a government actor. As a result of Defendants' objectively unreasonable use of force, Mr. Sauceda suffered abrasions, lacerations, head trauma, suffocation, and death. The Defendants acted unreasonably and applied force that vastly exceeded their need when they beat,

hogtied, and killed Mr. Sauceda—especially considering that Mr. Sauceda was an unarmed DWI suspect, whom Defendants believed to be intoxicated based on his purported loss of faculties. The Defendants' use of force was also objectively unreasonable because Mr. Sauceda did not fight with the Defendants, was not resisting, and was vastly outnumbered by the armed Defendants.

28. Defendants also violated Mr. Sauceda's right to substantive and procedural due process. First, Defendants had a duty to refrain from being deliberately indifferent to Mr. Sauceda's serious medical needs—especially considering they caused Mr. Sauceda's serious medical condition. Instead of satisfying their duty, the Defendants: (1) beat Mr. Sauceda; (2) hogtied him face down on a stretcher; (3) deterred attempts by medical professionals to assess and attend to his medical needs; and (4) watched him struggle face down, discharge liquid from his mouth, turn purple and blue, and die. The Defendants were well aware of Mr. Sauceda's serious medical condition and risk of serious injury, but they failed to act until he was dead.

29. Additionally, the Defendants created Mr. Sauceda's serious medical conditions that caused Mr. Sauceda's death by leaving him hogtied in a prone, facedown position when he was purportedly intoxicated. Despite that danger, the Defendants failed to turn Mr. Sauceda's head so that he could breathe, failed to seek medical attention despite being in the Hospital, and failed to provide Mr. Sauceda medical assistance until he was dead.

    ii.   Qualified Immunity Does Not Apply

30. Qualified immunity does not shield the Individual Defendants from suit or liability. As set forth above, the Individual Defendants violated Mr. Sauceda's federal rights. Additionally, at the time the Individual Defendants killed Mr. Sauceda, it was clearly established that they had a duty to not be deliberately indifferent to the serious medical needs of a pretrial detainee such as

Mr. Sauceda. Additionally, the law clearly imposed a duty on state actors such as the Individual Defendants to use a quantum of force that is reasonable under the circumstances. The law clearly prohibited the Defendants from using the quantum of force they used against Mr. Sauceda and from deliberately failing to respond to the serious medical condition of a pretrial detainee that was caused by the Defendants. Accordingly, the Individual Defendants' conduct was objectively unreasonable under the state of the law at that time. Therefore, qualified immunity does not shield the Individual Defendants from suit or liability.

    iii.   Policy or Custom

31. Pasadena Police Chief Michael W. Thaler ("Chief Thaler") is appointed by the Pasadena Mayor, subject to confirmation by the Pasadena City Counsel. Chief Thaler has the duty to supervise, train, and direct the Defendant City's police force. Chief Thaler may delegate this authority to other police officers. For purposes of Plaintiffs' Section 1983 claims, these individuals, collectively or individually, constitute policymakers, who promulgated policies and procedures that encouraged Defendants to—or failed to discourage Defendants from—employing excessive force against pretrial detainees, being deliberately indifferent to pretrial detainees' serious medical needs, deterring private medical assistance offered to pretrial detainees in need of such assistance, and causing serious medical conditions and refusing or failing to remedy those conditions. Alternatively, those failures represent persistent, widespread practices of which the policymakers were aware. Although this Petition is drafted without the benefit of discovery, and although the Defendants have resisted the Plaintiffs' requests for information under the Public Information Act, the number of Defendant City's police officers perpetuating and observing this egregious conduct—without objection—suggests that it was carried out according to that policy or custom. These policies, practices, and customs provided

the moving force behind Mr. Sauceda's injuries and death, and the Plaintiffs' damages. Absent these policies, practices, or customs, the Defendants would not have hogtied Mr. Sauceda face down on a stretcher, beaten him, watched him struggle and die, and refused to provide him medical assistance in the interim.

32. Furthermore, the Defendant City failed to adequately train its officers to safely restrain pretrial detainees such as Mr. Sauceda. It is well-known that hogtying a person may cause serious injury and death. Use of hogtie restraints is also inappropriate, given the many alternative methods of restraining non-dangerous pretrial detainees such as Mr. Sauceda, whose guilt has not even been adjudicated. At the very least, the Defendant City failed to train its officers to discontinue the use of the hogtie restraints once the need no longer exists and to monitor hogtied detainees (or allowing medical personnel to do so) to prevent suffocation and related complications. The Defendant City's failure caused Mr. Sauceda's death, and was the product of Defendants' deliberate indifference and reckless disregard for the health of pretrial detainees. On information and belief, the officers who caused or contributed to cause Mr. Sauceda's death had a prior tendency to employ excessive force against pretrial detainees and to ignore pretrial detainees' serious medical needs. The Defendant City, Chief, and their delegates knew of those tendencies.

## B. TTCA – Defendant City

33. Plaintiffs incorporate Part V in this section as if fully restated herein.

34. The Defendant City is a governmental unit for which the TTCA waives immunity. The individuals who killed Mr. Sauceda were employed by the Defendant City, and all Defendants owed Mr. Sauceda a duty of care. The Defendant City breached that duty by: (1) negligently using hogtie restraints to restrain Mr. Sauceda; (2) negligently creating a risk of serious bodily

harm to Mr. Sauceda; (3) negligently failing to identify Mr. Sauceda's serious medical condition while he was hogtied on the stretcher, or to provide or procure medical treatment for Mr. Sauceda's injuries before he died; (4) negligently placing Mr. Sauceda face down in a hogtied position on the stretcher during Mr. Sauceda's transfer to the Hospital and stay at the Hospital; (5) negligently failing to remove the hogtie restraints from Mr. Sauceda's body in time for Hospital staff to revive Mr. Sauceda; (6) negligently failing to monitor Mr. Sauceda's condition—or to allow Hospital staff to do so—as he lay face down and hogtied; (7) negligently using equipment to restrain Mr. Sauceda that did not adequately protect him from injury, suffocation, and death; and (8) other conduct described herein. The equipment used to restrain Mr. Sauceda was inadequate to protect Mr. Sauceda from the inherent dangers posed by being hogtied face down. The use and condition of the restraints, stretcher, and other equipment employed by the Defendant City proximately caused Mr. Sauceda's injuries and death.

35. No exception to the TTCA waiver applies.

36. To the extent the Defendant City's duties are discretionary—which is denied—it remains subject to suit and liability because it breached those duties in bad faith—especially considering the documented dangers associated with hogtying pretrial detainees, and considering the Defendant City offered Mr. Sauceda no assistance until he had become cyanotic and died. No reasonably prudent officer or official could have believed that the Defendant City's use of dangerous equipment to hogtie and restrain Mr. Sauceda throughout this whole ordeal was justified or appropriate.

37. Further, the Defendant City negligently trained its officers regarding: (1) the circumstances that justify use of the hogtie restraints; (2) how to properly use the hogtie equipment and technique so as to not seriously injure or kill a pretrial detainee; (3) what dangers

640779                                                    10

are involved in using the hogtie technique and equipment; (4) how to properly monitor a pretrial detainee who is hogtied; (5) how to recognize the warning signs of physical injury and death caused by the hogtie equipment and technique; and (6) how to properly respond to injuries caused by the hogtie restraints. The Defendant City, likewise, negligently supervised the officers who caused or contributed to cause Mr. Sauceda's death. Alternatively, the Defendant City wholly failed to train or supervise the officers with respect to these subjects, and it made that decision in bad faith—especially considering the documented dangers associated with hogtying pretrial detainees.

38. Mr. Sauceda's injuries and death were caused by the condition, use, and misuse of tangible personal property, including, without limitation, the hogtie restraints and stretcher. Additionally, the Defendant City had actual notice that Mr. Sauceda died because its officers caused and witnessed Mr. Sauceda's death, and the Defendant City conducted an autopsy. At any rate, the Plaintiffs supplied timely presuit notice in accordance with the Defendant City's charter and the TTCA. Were the Defendant City a private citizen, it would be liable under Texas law.

39. The Defendants' negligence was a proximate cause of Mr. Sauceda's injuries, suffering, and ultimate death. It was also a proximate cause of all damages sought by this lawsuit.

## C. Ordinary Negligence – Individual Defendants

40. Plaintiffs incorporate Part V in this section as if fully restated herein.

41. The Individual Defendants owed Mr. Sauceda a duty of care and breached that duty by: (1) negligently using hogtie restraints to restrain Mr. Sauceda; (2) negligently creating a risk of serious bodily harm to Mr. Sauceda; (3) negligently failing to identify Mr. Sauceda's serious medical condition while he was hogtied on the stretcher, or to provide or procure medical

treatment for Mr. Sauceda's injuries before he died; (4) negligently placing Mr. Sauceda face down in a hogtied position on the stretcher during Mr. Sauceda's transfer to the Hospital and stay at the Hospital; (5) negligently failing to remove the hogtie restraints from Mr. Sauceda's body in time for Hospital staff to revive Mr. Sauceda; (6) negligently failing to monitor Mr. Sauceda's condition—or to allow Hospital staff to do so—as he lay face down and hogtied; (7) using equipment to restrain Mr. Sauceda that did not adequately protect him from injury, suffocation, and death; and (8) other conduct described herein.

42. The Individual Defendants' negligence proximately caused Mr. Sauceda's death and the Plaintiffs' damages and injuries.

*D. Intentional Torts – Individual Defendants*

43. Plaintiffs incorporate Part V in this section as if fully restated herein.

44. Plaintiffs plead these claims in the alternative to its TTCA claims.

45. The Individual Defendants intentionally, knowingly, or recklessly made contact with Mr. Sauceda and caused Mr. Sauceda serious bodily injuries and death. Accordingly, the Individual Defendants are liable for assault/battery under Texas law.

46. The Individual Defendants intentionally or recklessly caused Plaintiffs' severe emotional distress by perpetuating extreme and outrageous conduct toward Mr. Sauceda. Accordingly, the Individual Defendants are liable for intentional infliction of emotional distress under Texas law.

## VII.
## DAMAGES

47. As a result of Defendants' acts and omissions set forth herein, the Plaintiff survivors suffered the following injuries and damages:

(1) Loss of advice and counsel that Mr. Sauceda might have rendered had he survived;

(2) Loss of services, including, without limitation, parent's services;

(3) Expenses for psychological treatment incurred as a result of Defendants' conduct and Mr. Sauceda's death;

(4) Funeral expenses;

(5) Mental anguish;

(6) Loss of companionship and society; and

(7) Loss of inheritance.

48. As a result of Defendants' acts and omissions, Mr. Sauceda and/or his Estate suffered the following injuries and damages:

(1) Pain and mental anguish;

(2) Medical expenses; and

(3) Funeral expenses.

## VIII.
## ATTORNEY'S FEES

49. Plaintiffs would show that they are entitled to recover reasonable and necessary attorney's fees incurred as a result of prosecuting these claims.

## IX.
## EXEMPLARY/PUNITIVE DAMAGES

50. As set forth above, the Defendants' conduct demonstrated evil motive or intent; reckless or callous indifference to Mr. Sauceda's federally protected rights; a subjective consciousness of a risk of injury or illegality; a criminal indifference to civil obligations; subjective recklessness; a violation of well-established precedent regarding treatment of pretrial detainees; gross negligence; or some combination thereof. Accordingly, the Plaintiffs are entitled to exemplary/punitive damages.

## X.
## REQUEST FOR DISCLOSURE

51. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this Plaintiffs' Requests for Disclosure to Defendants.

## XI.
## JURY DEMAND

52. Plaintiffs request that this case be tried by jury and pay the jury fee contemporaneously with the filing of this Original Petition.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final hearing they have judgment against the Defendants for an amount far in excess of the jurisdictional limits of this Court; for prejudgment and post-judgment interest, for costs of court and attorney's fees, and for all other relief, legal and equitable, to which they may be entitled.

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: *Larry Wilson*

W. MARK LANIER
State Bar No.: 11934600
Lawrence P. Wilson
State Bar No.: 21704100
Benjamin T. Major
State Bar No.: 24074639
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Telecopier: (713) 659-2204

ATTORNEYS FOR PLAINTIFFS